NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DANIEL PAOLUCCI**, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>**FCA US LLC**,<br><br>Defendant. | Civil Action No. 23-2982 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon the Motion to Dismiss Plaintiff's Amended Class Action Complaint (the "Motion," ECF No. 12) filed by Defendant FCA US LLC ("Defendant" or "FCA").[1] Defendant filed a brief in support of the Motion ("Moving Br.," ECF No. 12-1) as well as the Declaration of James S. Coons ("Coons Decl.," ECF No. 12-2). Plaintiff Daniel Paolucci ("Plaintiff") filed an opposition ("Opp'n Br.," ECF No. 16), to which Defendant replied ("Reply Br.," ECF No. 20). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2] For the reasons outlined below, the Court will **GRANT** Defendant's Motion to Dismiss.

---

[1] FCA, formally Chrysler, is a vehicle manufacturer that distributes, markets, and sells motor vehicles under various brands, including "Chrysler," "Dodge," "Jeep," "RAM," and "Mopar," to retail consumers through a network of authorized dealerships. (Am. Compl. ¶¶ 47, 70.)

[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

1

I.  **BACKGROUND AND PROCEDURAL HISTORY**[3]

In January 2017, Plaintiff purchased a 2017 RAM 1500 Rebel motor vehicle from an authorized car dealership in New Jersey. (Am. Compl., ECF No. 9 ¶ 20.) The vehicle included an "Air Ride" air suspension system that is critical to its steering and handling capabilities. (*Id.* ¶¶ 1, 3, 20.) Beginning in October 2021, Plaintiff experienced a defect in his vehicle's Air Ride system (the "Defect"), which started out as an "occasional, gradual, loss" of his vehicle's suspension, including while he was driving it. (*Id.* ¶¶ 24–25.) After the Air Ride suspension system failed again in December 2021, Plaintiff took his vehicle to the dealership for an inspection and repair. (*Id.* ¶¶ 26–27.) A service technician advised Plaintiff that the Air Ride system often presented issues and might have to be replaced, although the dealership could not provide a definitive diagnosis for a minimum of two weeks. (*Id.* ¶ 27.)

By January 2022, the vehicle's Air Ride system was completely non-functional despite multiple attempts by Plaintiff to reset it. (*Id.* ¶ 29.) Plaintiff then had his vehicle towed to one of Defendant's nearby authorized service departments at a different dealership. (*Id.*) After Plaintiff's vehicle underwent a multipoint inspection, service technicians confirmed that the Air Ride system contained the Defect and informed Plaintiff that all of the system's components might have to be replaced in order to fix it, at a minimum price of $3,725. (*Id.* ¶¶ 30–31.) The technicians explained that the Defect was likely caused by a known Air Ride system issue wherein moisture permeates the system, freezes, and causes damage to the internal components. (*Id.* ¶ 32.) Plaintiff was told that his vehicle is unsafe to drive in cold weather, and that a complete replacement of the Air Ride system constituted "regular maintenance" of the vehicle. (*Id.* ¶¶ 32–33.) Plaintiff protested by contacting FCA directly, via customer service, to request a goodwill replacement of his vehicle.

---

[3] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

(*Id.* ¶ 33.) Plaintiff's request was denied on January 7, 2022. (*Id.*) He thereafter spent $2,898 to remove the Air Ride system from his vehicle entirely and replace it with an alternative suspension system. (*Id.* ¶ 34.)

Plaintiff filed a class action complaint against Defendant in May 2023. (ECF No. 1.) Then on October 25, 2023, Plaintiff amended his complaint. (ECF No. 9.) The operative Amended Complaint brings claims for violation of the Magnuson-Moss Warranty Act (Count I) and Breach of the Implied Warranty of Merchantability (Count II). Thereafter, Defendant filed the instant Motion to Dismiss. (ECF No. 12.)

## II.     JURISDICTION

This Court has jurisdiction over the claims of the Amended Complaint under 28 U.S.C. §§ 1331 and 1332.

## III.    LEGAL STANDARD

### A.     Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation

omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.   DISCUSSION

### A.   Breach of the Implied Warranty of Merchantability (Count II)

Count II of the Complaint alleges a state law claim for breach of the implied warranty of merchantability. Defendant argues that Count II must be dismissed for three reasons: first, the extended use of Plaintiff's vehicle—nearly five years and tens of thousands of miles before the Defect surfaced—precludes a lack of merchantability, (Moving Br. at 4–5); second, the express, written warranty for Plaintiff's vehicle expired before the Defect surfaced, precluding a cause of action based on the implied warranty, (*id.* at 5–6); and third, the applicable four-year statute of limitations bars Plaintiff's claim,[4] (*id.* at 6–7). Plaintiff argues that his vehicle lacked merchantability "as a matter of law" because a latent defect caused the Air Ride system to fail, making his vehicle unfit for the ordinary purpose of driving. (Opp'n Br. at 11.) Plaintiff additionally contends that "[i]t would be unconscionable as a matter of law" to limit the duration

---

[4] Defendant acknowledges that a discovery rule tolling provision may apply to certain express warranty claims, but argues that such a provision is inapplicable here because it does not apply to implied warranty claims. (Moving Br. at 6 n.4.)

4

of the implied warranty here to that of the express warranty, and that Plaintiff sufficiently alleges unconscionability. (*Id.* at 12–14.) Lastly, Plaintiff argues that the statute of limitations was tolled under the equitable tolling doctrine, because Plaintiff discovered the Defect only after the period had run despite Plaintiff's proper diligence. (*Id.* at 14–15.)

To state a claim for breach of the implied warranty of merchantability, a plaintiff must sufficiently allege that "a defect renders the vehicle unfit for its ordinary purpose of providing transportation for its owner." *Stevenson v. Mazda Motor of Am., Inc.*, Civ. No. 14-5250, 2015 WL 3487756, at *12 (D.N.J. June 2, 2015) (internal quotation marks omitted) (quoting *Sheris v. Nissan N. Am. Inc.*, Civ. No. 7-2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (discussing N.J. Stat. Ann. § 12A:2A-212)). "A claim for breach of implied warranty must ordinarily arise shortly after purchase—there will typically be no claim for breach of implied warranty where plaintiffs have driven their cars without problems for years." *Skeen v. BMW of N. Am., LLC*, Civ. No. 13-1531, 2014 WL 283628, at *16 (D.N.J. Jan. 24, 2014) (internal quotation marks omitted). Furthermore, a lawsuit must be brought within a warranty's duration in order to assert a claim for its breach; implied warranties such as the implied warranty of merchantability expire upon expiration of any express warranties for that same product. *N.J. Transit Corp. v. Harsco Corp.*, 497 F.3d 323, 329–30 (3d Cir. 2007) (dismissing breach of implied warranty of merchantability claim where damage arose after the express warranty had expired).

Here, Plaintiff alleges that he purchased his vehicle in January 2017. (Am. Compl. ¶ 20.) He first began experiencing the Defect in his vehicle's Air Ride system in October 2021, over four and a half years later. (*Id.* ¶ 24.) Plaintiff alleges that an express warranty covered certain repairs to his vehicle "for 36 months from the date it begins or for 36,000 miles on the odometer,

5

whichever occurs first."[5] (*Id.* ¶ 78 (discussing Defendant's RAM Basic Limited Warranty).) The warranty thus expired in January 2020 at the latest, three years after Plaintiff purchased his vehicle and twenty-two months before he began to experience the Defect.

The Court finds that this timeline of events, as pled, precludes Plaintiff's breach of implied warranty claim because the Defect did not arise until long after the express warranty on his vehicle had already expired. (*Id.* ¶¶ 20, 24, 78.) Such facts do not provide a plausible claim that Plaintiff's vehicle was "unfit for its ordinary purpose," which cannot be brought in any event after expiration of the applicable warranty.[6] *Stevenson*, 2015 WL 3487756, at *12–13; *see also Sheris*, 2008 WL 2354908, at *5–6 (dismissing breach of implied warranty of merchantability claim where plaintiff drove his car for 20,000 miles and two years before needing to replace his break pads); *Glass v. BMW of N. Am., LLC*, Civ. No. 10-5259, 2011 WL 6887721, at *15 (D.N.J. Dec. 29, 2011) (dismissing breach of implied warranty of merchantability claim where plaintiff drove merchantable vehicle for five years without problems and experienced defect only after the express warranty had expired); *Taylor v. BMW of N. Am., LLC*, Civ. No. 20-1994, 2021 WL 1186777, at *12–13 (D.N.J. Mar. 29, 2021) (dismissing breach of implied warranty claim brought after express warranty had expired).

The Court therefore finds that Count II is insufficiently pled and will dismiss it without prejudice. Accordingly, the Court will grant Defendant's Motion to Dismiss with respect to Count II.

---

[5] Plaintiff does not allege that a different duration exists for implied warranties of his vehicle, and in fact quotes a passage from a Dealer Sales and Service Agreement suggesting that the express warranty overrides any other warranties, including "any implied warranty of merchantability." (Am. Compl. ¶ 75.)

[6] The Court finds Plaintiff's argument regarding unconscionability unavailing. As Defendant points out (*see* Reply Br. at 4–5), the Amended Complaint contains no allegations that Defendant manipulated the warranty terms to render them unconscionable, or that Defendant made any specific misrepresentations about the Air Ride system despite having "superior knowledge" of the Defect, distinguishing this case from *Skeen*, 2014 WL 283628, at *16, and *In re Volkswagen Timing Chain Prod. Liab. Litig.*, Civ. No. 16-2765, 2017 WL 1902160, at *12 (D.N.J. May 8, 2017), the cases on which Plaintiff relies. (*See generally* Am. Compl.)

### B. Violation of the Magnuson-Moss Warranty Act (Count I)

Count I of the Complaint alleges a violation of the Magnuson-Moss Warranty Act ("MMWA"), codified at 15 U.S.C. § 2301, *et seq.* (Am. Compl. ¶¶ 94–113.) Defendant argues that Count I should be dismissed because the Amended Complaint does not meet the MMWA's class action jurisdictional requirement of having at least one hundred named plaintiffs. (Moving Br. at 3–4.) Plaintiff counters that the Court does have subject matter jurisdiction over all of his claims, including Count I, because the Court has original jurisdiction over his state law claim under the Class Action Fairness Act ("CAFA") and supplemental jurisdiction over his MMWA claim. (Opp'n Br. at 9–10.) In this Circuit, Plaintiff is incorrect as a matter of law. For purposes of subject matter jurisdiction, the MMWA requires that a claim identify 100 named plaintiffs, and the Third Circuit has explicitly held that CAFA cannot be used to otherwise create subject matter jurisdiction for MMWA claims. *Rowland v. Bissel Homecare, Inc.*, 73 F.4th 177, 183 (3d Cir. 2023) ("CAFA does not provide a basis for federal jurisdiction over MMWA class actions that do not satisfy the MMWA's jurisdictional requirements.") Accordingly, the Court will also grant Defendant's Motion to Dismiss with respect to Count I.[7]

### V. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's Motion to Dismiss. The Amended Complaint will be dismissed without prejudice. Plaintiff will be given an opportunity to file an Amended Complaint to address the defects identified in this Opinion within 30 days. An appropriate Order will follow.

Date: **July 9, 2024**

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE

---

[7] Given that the Court concludes it lacks subject matter jurisdiction as to Plaintiff's MMWA claim, the Court does not reach its merits at this time.